## UNITED STATES, FOR THE USE, &c. *v.* THE UNION BANK.

The Act of Congress of 3d March, 1849, which authorizes the Secretary of the Treasury to discharge the sureties of *Thomas Gibbes Morgan* from the payment of one-third of the judgment against them, on their paying or securing the residue, does not assign to the sureties the rights of the Government against parties with whom *Morgan* had dealt officially. The assignment made by the Secretary to the sureties, and the permission given by that officer to them to use the name of the United States for their benefit, was unauthorized by law.

As a general rule, it is more than questionable whether the Court, in an action of this kind, can disregard the usees, and give a judgment for the nominal plaintiff. But in the present case, public policy, no less than legal principle, and the peculiar facts disclosed in evidence, preclude us from allowing the usees to disappear, and to substitute another actor in their place.

The use of the name of the Government, with all its privileges and prerogatives, in the prosecution of individuals, for the benefit of other individuals, must be discountenanced by this Court.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J. *Hunton* and *Benjamin & Micou,* for plaintiffs. *Denis* and *Durant & Hornor,* for defendant.

*Benjamin & Micou,* for plaintiffs :

The objections of the defendant on this point seem to be pointed against the power of the officers of the Government to collect the money claimed for the use of *Morgan's* sureties.

The plain answer to these objections is this : If the defendant be really liable under the facts stated in the petition, (and they must be taken as true for the purposes of this argument,) then none but the United States have the legal right to sue, and the statement in the petition that the suit is brought for the use of others cannot impair this legal right. It is a matter with which the defendant can have no concern, whether the money is to go into the public treasury, or into the coffers of private persons. The only right of a party defendant under such circumstances, is to demand·that the suit be brought in such form as to render the decision, if given in his favor, final and conclusive—or if against him, to protect him from any claim by other parties on the same cause of action. In the present case the parties are such as to secure this result, and there is, therefore, no right in defendant to inquire into the fact whether or not *Morgan's* sureties will profit by a decision in favor of plaintiffs. It suffices for him to know that the decision in this cause will be forever final, as to the right of action, whether that decision be favorable or adverse to his pretensions. 2 Hennen's Dig. p. 1178.

*Denis* and *Durant & Hornor,* for the Bank :

This suit was brought in the name of the United States without authority of law, and must therefore fall.

It is not in the power of any one, at his own choice, to bring a suit in the name of the United States; this is self-evident. Nor is it sufficient that he who brings the suit should simply be a United States officer ; this is equally clear. He must be the officer vested by law with authority to institute judicial proceedings in their name, and in support of this we proceed to quote the statutes.

According to the evidence adduced on the trial, this suit, as far as the United States is concerned in it, is brought under the authority of the Solicitor of the Treasury. The powers and duties of that officer are prescribed by the act of 29th May, 1830, Sec. 1, (4th Statutes at Large, page 414) entitled "An Act to provide for the appointment of a Solicitor of the Treasury," which declares "that there shall be appointed by the President of the United States some suitable person, learned in the law, to be Solicitor of the Treasury ; and that all and singular the powers and duties which are by law vested in, and required from the agent of the Treasury of the United States shall be transferred to, vested in, and required from the said Solicitor of the Treasury ; and the said Solicitor of the Treasury shall also perform and discharge so much of the duties heretofore belonging to the office of Commissioner, or acting Commissioner of the Revenue, as relates to the superintendence of the collection of outstanding,

direct and internal duties." The duties of Commissioner of the Revenue are defined by the sixth section of the Act of 8th May, 1792, 1st Statutes at Large, page 280, entitled "An Act making alterations in the Treasury and War Departments," and provides that the "Commissioner of the Revenue shall be charged with superintending, under the direction of the head of the Department, the collection of the revenues of the United States, other than duties on impost and tonnage." If under this the Commissioner had, by implication, the power to cause suits to be instituted, it may be granted that the Solicitor has the same, but only for the purpose mentioned in the act of 29th May, 1830, above quoted, viz : to enforce the collection of the outstanding, direct and internal duties, he would have no power to bring suit for the collection of duties on impost and tonnage, or to recover such from any party with whom they may have deposited.

The duties and powers of the "Agent of the Treasury," the only others vested in the Solicitor, are defined in the first section of the Act of 15th May, 1820, 3d Statutes at Large, page 592, entitled "An Act providing for the better organization of the Treasury Department," which says, "That it shall be the duty of such officer of the Treasury Department, as the President of the United States shall, from time to time, designate for that purpose, as the Agent of the Treasury, to direct and superintend all orders, suits, or proceedings in law or equity, for the recovery of money, chattels, lands, tenements, or hereditaments, in the name and for the use of the United States." Here is given, in regard to legal proceedings, merely the faculty of guidance and direction; he has no power to institute proceedings or prosecutions. If a Collector of Customs, Receiver of Public Moneys, or other public officer make default, the Comptroller of the Treasury must make out his account, and send it to the agent, with instructions to have process issued (see same Act and page, section two;) for the Agent or Solicitor can know nothing of the state of any man's account, and must himself wait for instructions on that head, before he can have suit brought for the amount found due. So, in case Congress should see fit to claim any particular lands or tenements, that body would order suit to be brought, and the Solicitor would guide, direct, and superintend the proceedings; but to order suits from his own prompting, he has no power, for, as is shown, none such is given to him. This power, so far as money due the United States is concerned, is lodged with another officer, viz : the Comptroller, as will be found by reference to the third section of the Act of September 2, 1789, entitled "An act to establish the Treasury Department," 1st Statutes at Large, page 66, which says "that it shall be the duty of the Comptroller to superintend the adjustment and preservation of the public accounts, etc. He shall, moreover, provide for the regular and punctual payment of all moneys which may be collected, and shall direct propositions for all delinquencies of officers of the revenue, and for debts that are or shall be due to the United States."

Here we find that it is the Comptroller alone who is clothed with authority to adjust accounts for money due the United States, and to originate prosecutions for its recovery, while it is the duty of the Solicitor to take the direction and superintendence of such suits after they have been ordered to be brought. In the present case no order ever emanated from the Comptroller to the United States Attorney in New Orleans, to institute suit against the Union Bank; his orders came from the Solicitor alone, who, as we have seen, had no power to give them, and the suit is therefore brought without authority, and must fall.

BUCHANAN, J. This suit is instituted in the name of the United States of America, "who sue for the use and benefit of *Thomas W. Chinn, Micajah Courtenay* and *Josiah Barker*."

It appears that Messrs. *Chinn, Courtenay* and *Barker*, together with one *Davenport*, deceased, were the sureties upon the official bond of *Thomas Gibbes Morgan*, as Collector of the port of New Orleans; that after said Morgan resigned said office, suit was brought by the United States against him and his sureties for a large balance, alleged to be due by him to the public Treasury. A judgment was rendered in that suit against *Mr. Morgan* and his sureties, jointly and severally, for the sum of $60,569 57. After this judgment, an act of Congress was passed for the relief of the sureties of *Morgan*, which act, being short, is here copied in full :

*(margin note: UNITED STATES v. UNION BANK.)*

UNITED STATES
*v.*
UNION BANK.

"SECTION 1. *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of the Treasury be and he is hereby authorized to discharge *Thomas W. Chinn* and *Micajah Courtenay,* and the other sureties of *Thomas Gibbes Morgan,* late Collector for the District of Mississippi, from the payment of one-third of the principal and interest of a judgment rendered against them in the Circuit Court of the United States, in and for the Fifth Circuit and District of Louisiana, upon their paying or securing the payment of the residue of said judgment, to the satisfaction of said Secretary : provided, the Secretary of the Treasury shall not be authorised to make the compromise of the claim as aforesaid, unless he shall be satisfied that, from the parties' pecuniary ability, said Collector and his sureties, the said claim is not collectable; and also that it is for the interest of the United States such compromise be made. Approved 3d March, 1849."

Under this act of Congress, *Messrs. Chinn* and *Courtenay* proposed to the Secretary of the Treasury that, upon being credited with one-third of the judgment, they would pay the entire balance of the same, in equal annual instalments of one and two years from the 30th June, 1850—afterwards extended to one, two and three years—and for such payment to give such security as would be deemed good and sufficient by the District Attorney of Louisiana.

The Solicitor of the Treasury, *J. C. Clark,* in a report to the Secretary of the Treasury, dated the — June, 1850, recommended that the proposition thus made by *Chinn* and *Courtenay,* be accepted, being convinced that the principal and sureties were unable to pay the judgment, and that the interest of the United States would be promoted by making the compromise.

The Secretary of the Treasury, *W. M. Meredith,* having approved of this report, and referred the matter back to the Solicitor to have the amount adjusted, that officer, by a report dated June 21st, 1850, adjusted the amount to be paid for the two-thirds of the judgment and interest, and deducting $17,000 paid on the judgment on the 19th April, 1848—at the sum of $27,034 94, and directed said balance to be settled by six notes, of equal amount, two payable one year, two payable two years, and two payable three years after the 21st June, 1850 ; and the Solicitor further added, that upon *Chinn* and *Courtenay* furnishing the said notes, they might use the judgment for the purpose of compelling their principal (*Morgan,*) and their co-sureties, *Barker* and the representatives of the estate of *Davenport,* to pay their just proportions of the amount to be secured to the United States by said *Chinn* and *Courtenay ;* any money to be collected upon the judgment from *Morgan, Barker* or *Davenport's* representatives, to inure to the common benefit of *Chinn* and *Courtenay ;* and in the event of either of them, *Morgan, Barker,* and *Davenport's* representatives, coming in and paying their proportion of the amount thus to be secured to be paid by the said *Chinn* and *Courtenay,* then the judgment shall inure to the benefit of said *Chinn* and *Courtenay,* and the party, or parties, thus coming in and paying his or their proportions, as aforesaid.

The Solicitor of the Treasury concludes this adjustment and report, by empowering *Chinn* and *Courtenay,* and any other of the defendants in the judgment who shall come in and pay their proportion as aforesaid, to use the name of the United States to recover from any person or persons, or from any corporation or banking institution, any amount of money which the United States might recover on the institution of suit against them, or any of them, and which they, or any of them, are liable to pay, on account of any moneys by said

*Morgan* deposited with them, or either of them, as Collector of the port of New Orleans, and by them, or either of them, paid over to the said *Morgan* illegally, the United States to be saved harmless from all costs and charges incurred in consequence of their name being used for such purposes.

It has appeared to us, after an attentive consideration of the evidence, that this *contract* of Messrs. *Chinn* and *Courtenay* with the Treasury Department, as it is styled by *Mr. Chinn*, in a letter addressed by him to the Secretary of the Treasury on the 22d July, 1850, has mistaken the letter and the spirit of the act of Congress of the 3d March, 1849, for the relief of the securities of *Thomas Gibbes Morgan.* Congress is alone competent to make a gift of the property of the United States. The judgment against *Morgan* and his sureties was undoubtedly the property of the United States. The act declaratory of the will of Congress, in relation to it, is as clear as it is brief. It authorizes the Secretary of the Treasury to discharge *Morgan's* securities from the payment of one-third of the judgment, on their paying or securing to their satisfaction the payment of the residue of the judgment. This was clearly a release made by Congress to certain debtors of the nation, of one-third of their debt, on condition of their paying or securing the other two-thirds. Such release was unaccompanied by any assignment to *Morgan's* sureties, of the rights of the Government against parties with whom *Morgan* had dealt in his official capacity. The assignment made by the Solicitor of the Treasury to *Chinn* and *Courtenay*, and the permission given by that officer to those gentlemen to use the name of the United States for their own benefit, are viewed by us as unauthorized by law, and as conferring no right whatever to maintain the present action.

It is possible that the United States may have a legal claim against the Union Bank, for moneys deposited in the Bank by *Morgan*, as Collector. We do not, however, consider ourselves required to go into the consideration of that question, at this time. In the present action, the real plaintiffs are *Chinn, Courtenay* and *Barker*. See 4 N. S. 135. 6 Rob. 17. Avowedly, any judgment that we might render herein against the defendant, would inure to *their* benefit. The pretended assignment of the rights of the United States by the Solicitor of the Treasury, is an essential part of the plaintiff's case, and has been so treated by us in this opinion. The decision to which we have come being adverse to the validity of the assignment, the action must fail.

It has been contended by the counsel for plaintiffs, *en dernier ressort*, that although the United States have brought this suit for the use and benefit of individuals, yet the Court may enter up judgment herein in favor of the United States for their own benefit, should the assignment be declared invalid.

As a general rule, this is more than questionable. We have seen that in an action of this kind, our jurisprudence considers the usee as the real plaintiff. The statement of the petition gives the Court to understand that the interest is in *him*. It seems anomalous that the Court should give judgment in favor of a party not, in reality, interested in the suit.

But, in the present case, public policy, no less than legal principle and the peculiar facts disclosed in evidence, preclude us from allowing the usees to disappear from the scene of litigation, and to substitute another actor in their stead.

The letter of *Thomas W. Chinn*, to the Secretary of the Treasury, of the 22d July, 1850, claims as a right, under his contract with the Treasury Department, the immediate transmission and "full and faithful" assignment to *Courtenay* and himself, of "the judgment obtained by the United States against *Morgan*

UNITED STATES
*v.*
UNION BANK.

and his sureties," as well as of " all claim or lien which the United States may have against the Union Bank of Louisiana ;" " we, the said *Courtenay* and *Chinn*, to have and enjoy all the rights and benefits that may accrue to us from the said assignment." Accordingly, we find that the acting Solicitor of the Treasury, in a letter of the 10th August, 1850, addressed to the District Attorney of the United States, at New Orleans, informs that officer that *Messrs. Chinn* and *Courtenay*, having fulfilled all the stipulations of the arrangement made by them with the Secretary of the Treasury, on the 21st June, 1850, " are now entitled to all advantages which said arrangement accords to them, and it is the desire of the department that you render them every aid and facility necessary to their full enjoyment. To this end, you are hereby authorized to do any and every official act which may be necessary on the part of the Government to make them available and effective, *taking care that in all they may deem it their interest to do under the judgment against Thomas Gibbes Morgan and his sureties, or in proceedings against any other person, corporation, or banking institution, mentioned or referred to in said arrangement, they keep the United States free from all costs and expenses ; it being clearly understood that whatever may be done, must be done at their own proper cost and charges.* I have enclosed to *Mr. Chinn* a copy of this letter, and informed him that he is now at full liberty to proceed as he may deem proper under the arrangement referred to." Three months after that letter was written, the petition was filed in the present suit—a petition signed by the District Attorney of the United States, the same to whom the letter was addressed; but the position of that officer in the suit is most distinctly defined by the letter itself. In the institution of the suit, he has but expressed the will of the usees, and the suit itself is entirely under the control of the usees, for their exclusive benefit, as it is at their exclusive charge.

This use of the name of the Government, with all its privileges and prerogatives, in the prosecution of individuals for the benefit of other individuals, without sanction of law, must be discountenanced by this Court. Were the claim against the defendant presented to us as a *bona fide* claim of the Government, divested of the circumstances which surround it, it would become our duty to examine and decide the important questions of law, relating to the liabilities of the Union Bank under its contracts with *Morgan*, as Collector. In its present shape, we cannot entertain the claim.

It is, therefore, adjudged and decreed, that the judgment of the District Court be affirmed, with costs in both Courts, and without prejudice to the rights of the United States, if any they have, against the defendant.